IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
AT KANSAS CITY

| | |
|---|---|
| JAMES STUELKE, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 4:17-cv-00801-FJG |
| INSULATING COATING CORPORATION and T.D. WILSON PAINTING, INC., | ) |
| Defendants. | ) |

DEFENDANTS' JOINT MOTION AND MEMORANDUM IN SUPPORT
OF MOTION TO EXCLUDE THE DESIGNATION AND
TESTIMONY OF PLAINTIFF'S EXPERT, FRANK COMER

Come now defendants, by and through their attorneys undersigned and move the Court for an order, excluding the designation and testimony of plaintiff's expert, Frank Comer ("Comer") (Doc. 38-1) because it is inadmissible under Rule 702 of the Federal Rules of Evidence and because his opinions improperly invade the province of the Court and the jury, respectively.

**Background**

Plaintiff claims damages as a result of the installation of a water proofing membrane manufactured by Defendant Insulating Coating Corporation ("ICC") and installed by defendant T.D. Wilson Painting, Inc. ("Wilson"). The membrane was applied to the roof of a building at Plaintiff's request in the summer of 2012. The petition alleges counts of breach of contract, breach of implied warranty of workmanlike performance, breach of implied warranties of merchantability and fitness for a particular purpose and violation of the Kansas Consumer Protection Act against both defendants and a separate claim against ICC for breach of express warranty.

Comer, plaintiff's expert, is a professional engineer. His opinions are offered as much as a closing argument as anything else. He opines on issues as diverse as the meaning of contractual

language, to what the parties reasonably thought they were getting out of the contract, to the structural integrity of the roof at the time the membrane was applied (the last issue being the only matter arguably within his field of expertise). Plaintiff filed his first Notice of Filing of Expert Report (Doc. 31) naming Frank Comer as his expert and attaching Comer's report on June 19, 2018. Defendants filed their joint motion to exclude Comer's opinions (Doc. 35). With Defendants' motion in hand, Plaintiff filed a second notice and expert report (Doc. 38) on August 13, 2018. This motion is directed at the new report which, though longer, does not correct the grave deficiencies in the first report.

## What Comer Actually Did and Did Not Do

Comer's work was limited to reviewing documents and photographs, a site visit on May 30, 2018 (after the roof had been replaced), and collection of items from the ground. He did not take any measurements, he did not perform any tests, and he does not reference any interviews with witnesses that might support his opinions. Comer did not identify specific locations on the surface of the roof where leaks originated, nor did he make any effort to trace the movement of water through the roof to correlate the location of water on the inside of the building with the movement of water from the surface of the roof. Finally, he did not mention, much less rule out, alternate causes to the potential failure of the membrane, such as damage to the roof after the application of the membrane. Comer's inspection of the roof did not occur until after the roof was "re-opened" and "re-covered" in early May, 2018 (see, Doc. 38-1, p. 4). These problems reduce his opinions about the roof to surmise, conjecture and of no value to a jury.

## Comer's Unsound Opinions

Comer's report is disorganized, so finding a specific recitation of his opinions requires some searching and guesswork. Under a section labeled "Executive Summary of Conclusions" (Doc. 38-1, pp. 2-3), Comer opines:

- That the Defendants knew the roof surface "was not structurally sound[,] nor dry, nor pond free," so the ASTEC roof coating should not have been applied. (Doc. 38-1, p. 2.) Comer does not identify where this opinion comes from, other than "evidence presented," and he does not indicate why, if there is such evidence, a jury would need someone with professional engineering license to testify as to what the Defendants "knew" based on the "evidence presented."

  **Problems**: It should be noted that there is no evidence that there was ponding on the roof or that the interior of the roof was wet on the date or dates of application. In fact, the application dates are not noted, nor is the weather at the time of, or in the days preceding, the application, nor is there an estimate of the moisture content of the roof at the time of the application (so of course there is also no showing of how someone examining the roof in 2018 would estimate the moisture content of the roof at the time of application). Finally, as to structural soundness, other than looking at recent photos of the underside of the roof and seeing the current condition of the same, Comer does not explain how he comes to his conclusion. He failed to measure any portions of the roof, including the alleged problem areas, and he did not specifically describe them (no length-width-height measurements, no angles of deflection, no load calculations, etc.). He does not even indicate if these areas coincide with sources of leaks or where the leaks have originated.

- That portions of a guarantee or warranty "implie[d] TDW is pre-qualified and authorized to perform and ensure their own quality assurance for the product being installed," and that other terms "confirm[ed] that TDWP recognize[d] that ICC specifically chose, selected, warranted, guaranteed, approved and authorized TDWP to perform the work …." (Doc. 38-1, p. 2.)

  **Problem**: These are legal opinions and factual inferences from the language in the contract, which are outside the ken of a professional engineer, and are for either the Court or the jury

3

to determine. In contrast to his original report, Comer adds that he has familiar with lots of contracts and has talked with lots of clients about contracts, so he should be permitted to give his opinion as to what he "believes" about what was in the parties' minds. (Doc. 38-1, pp. 2-3.) His "expertise" does not render him a judge or a juror, so he is not permitted to give these opinions in trial.

- "The parties to the installation of the product (ASTEC WMS) specifically and repeatedly in writing warranted and guaranteed that the product would, once applied, function to resolve all leak related problems, among other guarantees. Because of these facts, among other related findings and revelations presented herein, the installation of the product should not have been performed by an authorized contractor representing ICC in my opinion." (Doc. 38-1, p. 3.) From there, he asserts the workmanship relative to the installation of the ASTEC coating did not meet industry standards; however, he never identifies these standards and how contracts and/or warranties are of any relevance.

    **Problems**: The first sentence is, once again, a legal conclusion and factual inference which Comer is unqualified to make, and which are properly in the hands of the Court and the jury. In the second sentence, the phrase "these facts" refers directly to Comer's legal opinions, not his professional engineering opinions or observations. Further, "these facts" are what Comer relies on to assert a failure to meet industry standards; however, he fails to connect how contract and warranty provisions would set or impact industry standards.

The second part of the report that has apparent opinions is found under the heading "Current Observations and Findings" (Doc. 38-1, pp. 4-8). Here, he opines as follows:

- Photos taken on May 5 and 12, 2018 "revealed the metal decking was severely deteriorated a that time, revealing the metal decking was not structurally sound enough to support

4

application of the ASTEC WMS, nor should the roof have been traversed at all as it was unsafe." (Doc. 38-1, p. 4.)

**Problems**: The statement fails to reflect whether the condition of the roof in May of 2018 is indicative of the condition of the roof in 2012, when the coating was applied, and the statement fails to show what evidence or expertise Comer relies on for such an assertion (e.g. a factual description of the deterioration he claims is present). To be fair, he mentions that "metal decking is completely rusted through," but he fails to indicate the extent of the rusted sections, their size, or how much of the roof was affected—either at the times when observations were made, when photos were taken, or when the roof coating was applied.

- Comer's review of documents showed the Defendants knew the plaintiff was concerned about ponding and water saturation of the roof. (Doc. 38-1, pp. 4-5.)

    **Problem**: This is a factual inference that is for the jury to decide, and Comer's opinion provides no needed assistance.

- "It is later confirmed by another ICC qualified or approved installation contractor that the one-way vents, among other items, were installed incorrectly in some locations …." (Doc. 38-1, p. 6.)

    **Problems**: This is an opinion that does not come from Comer; rather, it comes from some other, unnamed person. Comer does not indicate what it was about the installation of the vents was incorrect, nor why he believes the incorrect installation would have affected the ability of the roof to dry. He certainly did not see the vents *in situ*. Since we do not know who came to the conclusion about the installation of the vents, we are unable to determine their qualifications, why Comer is relying on the opinion, and what was wrong with the installation of the vents. In fact, if the plaintiff intended to rely on this opinion, it should have been disclosed as an expert opinion under the Court's order. It was not.

- "My personal knowledge of this material (ASTEC WMS) …." (Doc. 38-1, p. 6.) Comer does not indicate where he comes by his personal knowledge.

  **Problem**: Although Comer's purported CV has been separately produced, it does not mention any personal experience with ASTEC WMS, nor does his report indicate that he has every used or examined the product, or whether he has seen it in other applications.

- "It is industry standard that ponding conditions must always be rectified prior to installation of a roof covering or coating system installation." (Doc. 38-1, p. 6.)

  **Problem**: Comer does not indicate what standard makes this statement. Further, this statement is vague, because it does not reflect whether the "industry standard" is to apply the coatings only after the water has been removed and the roof dried out, or if the roof must be made sufficiently flat that no ponds will ever exist. There is no evidence that ponds existed on the roof or that the interior of the roof was wet at the time the ASTEC coating was applied—and Comer makes no reference to any such evidence.

- New page and a-half long paragraph: Comer added a disjointed paragraph that runs from the last five lines of page 6 through the first eight lines of page 8. This section contains a variety of conclusions and admissions. "Rust-through constitutes a complete loss of structural support in the material," (Doc. 38-1, p. 6.), an inference that an average juror could readily come to; "This confirms the roof decking was not structurally sound at time of application of the ASTEC WMS," (Doc. 38-1, p. 7), other than examination of recent photos and the owner's representation that rusted portions had been replaced, there is no indication of what "this" is—for instance, how much of the decking was rusted through in 2012 (or even in 2018, when the roof was replaced)? What size were the sections of rusted-through roof deck? Where were those sections in relation to roof-surface leaks? Comer admits, "I was not on site during removal and replacement [of the roof, and] I cannot confirm the moisture content of the

6

substrate materials at the time the roof was replaced this year, I cannot confirm the moisture content in 2012." (Doc. 38-1, p. 7.) He references two tape-recorded conversations, but he does not indicate what is said in those conversations that forms the basis of his conclusions.

- "Since I cannot test the material that is now removed and taken away, I have no test results to offer in this case other than to provide the observation and opinion based on same that, where the metal decking is rusted through it is providing the roofing material no support." (Doc. 38-1, p. 7.) This is Comer's most telling admission. His did not examine the roof until the roof deck was replaced and the tear-off and re-roofing had been completed. All he can do is look at photographs and say what they show—which is precisely within the ability of the jury.

- Comer hypothesizes that covering a structurally unsound roof might make the membrane more susceptible to damage (Doc. 38-1, p. 7); however, he does not tie his hypothesis to a specific area of damage to the membrane or to any leaks in the roof surface. Further, he does not refer to any treatise, literature or industry standard on this point.

- Finally, this new section hypothesizes that it was reasonable to conclude that a variety of factors led to cracking of the membrane surface and subsequent leaks. (Doc. 38-1, p. 8.) "Reasonable to conclude," but not that this is actually what occurred, or that it is what occurred to a reasonable degree of engineering certainty or probability. Does he know the level of flexibility of the ASTEC membrane? Has he measured it? In the absence of actually examining the roof as it existed at the time, has he performed any tests? Has he evaluated photographs that show cracking in the membrane that was caused by the phenomenon he claims existed? If he has done any of these things, they do not appear in his report.

- Concluding paragraph on page 8: The Defendants should have known not to install the ASTEC coating based on saturated roof conditions in 2012.

7

**Problem**:  At no point in Comer's report does he point to any facts showing that water was on or inside the roof at the time ASTEC coating was applied.

## **Argument**

Federal Rule of Evidence 702 mandates exclusion of Comer's Report and Opinions

The Federal Rules of Evidence do not prefer opinion testimony.  Fed. R. Evid. 701 places strict limits on lay opinion testimony; and Fed. R. Evid. 702 requires the Court to enforce strict requirements before permitting expert opinions to be heard by a jury.  Further, this Court has ordered that all expert reports contain detailed information sufficient to stand as a direct examination.  Comer's report does not comply with the Rule, Federal Rules of Evidence 702 and 703, or this Court's order and must be excluded.  Under Rule 702 of the Federal Rules of Evidence expert testimony is admissible only if the witness is qualified as an expert and the expert testimony is reliable and will assist the trier of fact. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles or methods, and (3) the witness has applied the principles an methods reliably to the facts of the case. *Fed. R. Evid. 702.*

The Supreme Court has set forth a non-exhaustive list of criteria to assist the court in determining the reliability of proffered expert testimony: (1) whether the theory or technique underlying the testimony had been empirically tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error associated with a particular technique and whether standards exist controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-94 (1993).

8

The Supreme Court has since elaborated on *Daubert* stating:

> The objective of [the *Daubert*] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Kumho Tire Co. v. Carmichael,* 526 U.S. 136, 144 (1999).

Comer's report lacks detailed statements, supporting data, a clear summary of opinions or any of the information required by Rules 702 and 703. To the extent his opinions are discernable, they are inadmissible—either because he makes legal opinions (the effect and meaning of a contract), or because he offers opinions that encroach on the role of the factfinder (what various parties knew based on his review of documents), or because he apparently did little more than look at some photographs and he fails to express how his observations of these photographs support (or even relate to) his opinions. Consequently, the deficient expert report severely and improperly limits Defendants' ability to challenge, rebut or to meet Comer's proposed testimony at trial. Plaintiff's notice violates the Scheduling Order and Rule 26(a)(2)(B) and justifies exclusion of his designation, his report and any other testimony he might seek to offer in this matter.

Summarily, plaintiff's expert notice lacks the specificity required by the Scheduling Order and Rule 26. The Scheduling Order clearly states that "[o]ne of the purposes of the expert affidavit is to set forth the substance of a direct examination. If properly done, the expert affidavit should eliminate the need for deposing some experts. Consequently, the detailed statements in the affidavit are essential." *See* Doc. No. 29, ¶ 7(b). As it reads now, the notice does not provide Defendants with even the basic information to know whether the expert is qualified to give any opinions about roof coatings, ASTEC in particular, or the application thereof, let alone the substance of the expert's testimony and underlying "facts and data" so that defendants can prepare to meet the testimony at trial. In fact, it is impossible to discern how information in the documents listed or mentioned in Comer's report relate

9

to any of his opinions. Accordingly, Comer is unable to meet any of the requirements in Fed. R. Evid. 702 that are meant to establish the reliability of his opinions.

Further, most of Comer's proffered testimony is argument, legal conclusion, or inference that is not for him to make—in fact they are outside his role as a retained expert. To the extent that he attempts to draw factual inferences about the knowledge of the parties from documents and other items, these are the sorts of inferences that are determined by juries every day and do not require the assistance of an expert. *Ellis v. Miller Oil Purchasing Co.*, 738 F.2d 269, 270 (8th Cir. 1984)("Where the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous"). The test for determining whether an opinion impermissibly encroaches on the role of the jury is "whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Pelster v. Ray*, 987 F2d 514, 526 (8th Cir. 1994). In this instance, Comer purports to interpret a set of documents to divine what was in the minds of the parties—which is the jury's job, not the plaintiff's paid expert's.

Similarly, Comer would like to opine on the effect and expectations flowing from a contract and purported warranty in this case. These amount to legal opinions, which no expert is permitted to give, much less a professional engineer. *Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003)("Matters of law are for the trial judge, and it is the judge's job to instruct the jury on them").

The plaintiff offers Comer's opinion that the ASTEC coating was applied in violation of industry standards because there was ponding on the roof and the roof structure was saturated. Here, Comer runs afoul of the first condition of Fed. R. Evid. 702—that his testimony rely on sufficient facts and data. There is no photo, no document, and no testimony that indicates Wilson applied the ASTEC coating in 2012 when the roof was wet or ponded; certainly, Comer's testimony does not

10

identify any such evidentiary source. Likewise, Comer opines that the ASTEC should not have been applied—indeed, nobody should have been on the roof at all—because it was structurally unsound. Comer's is a professional engineer; however, his sole determination of the safety of the roof is the examination of photos. There are no measurements of the deterioration he describes, and no calculations of load-bearing capacity with and without the deterioration, and there is no indication of how or why he believes the deterioration made the roof structurally unsound (and why ASTEC should not, therefore, have been applied). Since he did not examine the roof in the condition of which the Plaintiff complains, or he could have examined or tested the samples of the roof he found to determine whether the membrane was in good condition or of appropriate thickness, or he could have devised a test to confirm his hypothesis about the development of cracks in unsupported roof membrane. But he did none of these things. Hence, Comer's opinions are not based on facts or data, nor are they the product of the application of reliable principles and methods. Accordingly, they do not survive analysis under Fed. R. Evid. 702.

Wherefore, for the reasons cited above, Defendants respectfully request an order form the Court excluding plaintiff expert from testifying in this matter.

Respectfully submitted,

*/s/ Stephanie Warmund*
Stephanie Warmund, #32817
9001 State Line Road, Suite 130
Kansas City, MO 64114
Telephone: (816) 361-7917
Facsimile: (603) 334-7445
JStephanie.Warmund@LibertyMutual.com
Attorney for T.D. Wilson Painting, Inc.

*/s/ Mark D. Katz*
Mark D. Katz #35776
CORONADO KATZ, LLC
14 W. Third St., Suite 200
Kansas City, MO 64105
mark@coronadokatz.com
Attorney for Defendant ICC

11

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was filed electronically this October 2, 2018 to:

Mr. Corbyn W. Jones
McDOWELL, RICE, SMITH & BUCHANAN, PC
605 W. 47th St., Suite 350
Kansas City, MO 64112
cjones@mcdowellrice.com
ATTORNEY FOR PLAINTIFF

/s/ *Mark D. Katz*
Attorney