# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| JAMES STUELKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 17-00801-CV-W-FJG |
| | ) | |
| INSULATING COATINGS CORPORATION | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Currently pending before the Court is defendants' Joint Motion to Exclude the Designation and Testimony of Plaintiff's Expert Witness Frank Comer (Doc. # 46).

## I. BACKGROUND

Plaintiff alleges damages as a result of the installation of a waterproofing membrane manufactured by Insulating Coatings Corporation ("ICC") and installed by defendant T.D. Wilson Painting, Inc. ("Wilson"). On June 14, 2012, plaintiff entered into an agreement for installation of an ASTEC Re-Ply Roof System ("ASTEC-WMS") on his property located at 5300 East 59th Street, Kansas City, Missouri 64130. ICC manufacturers liquid coatings that are applied on commercial roofs to establish waterproof membranes. Defendant Wilson is an independent contractor who applied the ASTEC coating to plaintiff's roof in July 2012.  Plaintiff first reported leaks in September 2012 and asserts that the roof has never stopped leaking. Plaintiff's petition alleges causes of action for breach of contract, breach of implied warranty of workmanlike performance, breach of implied warranties of merchantability and fitness for a particular

purpose and violation of the Kansas Consumer Protection Act against both defendants

and a separate claim against ICC for breach of express warranty.

## II. <u>STANDARD</u>

Under Fed.R.Evid. 702, a "witness properly qualified as an expert may testify in

regard to their 'scientific, technical, or other specialized knowledge' so long as it serves

to 'assist the trier of fact to understand the evidence or determine a fact in issue.'

Fed.R.Evid. 702." <u>Alberternst v. Hunt</u>, No. 4:10-CV-642-JAR, 2011 WL 6140888, *6

(E.D.Mo. Dec. 9, 2011). District courts also act in the role of a "gatekeeper" to ensure

that only relevant and reliable opinion testimony is admitted. <u>Daubert v. Merrell Dow</u>

<u>Pharm., Inc.</u>, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). "This

question of whether 'an expert's testimony both rests on a reliable foundation and is

relevant to the task at hand' is known as the 'reliability and relevancy' test." <u>Lipp v.</u>

<u>Ginger C, LLC</u>,  No. 2:15-cv-04257-NKL, 2017 WL 277613, *2 (W.D.Mo. Jan. 19,

2017)(quoting <u>Russell v. Whirlpool Corp.</u>, 702 F.3d 450, 456 (8th Cir. 2012)). In

<u>Khottavongsa v. City of Brooklyn Center</u>, No. 16-cv-1031 (RHK/DTS), 2017 WL

3822877 (D.Minn. Aug. 30, 2017), the Court stated:

> To determine reliability, the Court should examine (1) whether the theory
> or technique can be and has been tested, (2) whether it has been
> subjected to peer review and publication, (3) the known rate of potential
> error, and (4) whether the theory or technique has been generally
> accepted.

<u>Id</u>. at *4 (citing <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. at 589). In <u>Lipp</u>, the Court

stated:

> The <u>Daubert</u> standard is "flexible" and the above factors are guidelines
> rather than "a definitive checklist." <u>Jauregui v. Carter Manufacturing</u>
> <u>Company, Inc.</u>, 173 F.3d 1076, 1082 (8th Cir.1999). The expert's testimony
> must at the very least satisfy "the same level of intellectual rigor that

characterizes the practice of an expert in the relevant field," but "whether <u>Daubert's</u> specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." <u>Kumho Tire</u>, 526 U.S. at 151,153.

<u>Id</u>. at *2. "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." <u>Lauzon v. Senco Prods., Inc.</u>, 270 F.3d 681, 686 (8th Cir. 2001)(citing <u>Daubert</u>, 509 U.S. at 592).

## III. <u>DISCUSSION</u>

### A. Defendants' Motion to Exclude Plaintiff's Expert Frank Comer

In their initial Motion to Exclude plaintiff's expert Frank Comer (Doc. # 35), defendants alleged that Comer's expert report failed to comply with the Court's Scheduling and Trial Order, failed to follow the procedural requirements of Fed.R.Civ.P. 26(a)(2)(B) and was inadmissible under Fed.R.Evid. 702. Plaintiff did not file suggestions in opposition addressing the arguments raised in the motion to exclude, but instead requested leave to submit a supplemental expert report. The supplemental report was provided to defendants on August 13, 2018. Defendants have now filed a second motion to exclude plaintiff's expert (Doc. # 46) to which plaintiff's have responded.

Frank Comer is a professional engineer which plaintiff hired to provide opinions on workmanship quality and the use of industry standards of practice and care. On May 30, 2018, Comer performed a site investigation and review of the building. Defendants argue that thirteen of the opinions in Comer's report should be excluded because they contain legal conclusions as to the effect and meaning of the contract, his opinions encroach on the role of the factfinder as to what the parties knew or understood and also because Comer failed to conduct any tests to verify his hypotheses. Each of the

challenged opinions are discussed below:

**1. Defendants knowledge of roof structure and ponding of water.**

> *ICC and the installation contractor Wilson "knew in advance of the proposal-contract, that the roof surface was not structurally sound, nor dry, nor pond free, and therefore it is reasonable to conclude that both parties knew that this product could not be installed on the roof covering.*

Defendants state that Comer wants to testify as to what the parties were thinking based on his review of emails. Defendants argue that opinions of this sort are for the jury to decide and are improper expert testimony. Plaintiff states that the defendants' knowledge of the ponding and inadequate solution for resolving it relate to his opinion that the ASTEC product should not have been installed. Defendants argue that the email plaintiff refers to regarding ponding was before installation when the parties were negotiating the contract.

In <u>Jacobsen v. Cass County, Missouri</u>, Case No. 4:18-cv-00557-NKL, 2019 WL 3779524 (W.D.Mo. Aug. 12, 2019), the Court stated "an expert 'is not competent to testify as to the state of mind of others.'" <u>Id</u>. at *2 (quoting <u>Sanders v. Studdard</u>, No.12-01069-CV-W-GAF, 2014 WL 3487145, at *7 (W.D. Mo.Feb. 12, 2014)). Comer's opinion about what the defendants knew about the roof structure before application is clearly an attempt to testify as to the defendants' state of mind. Additionally, nothing in this opinion requires expertise. A jury can apply the facts considered and infer what the defendants knew about the roof structure at the time. <u>See</u> <u>United States v. Wilson</u>, 103 F.3d 1402, 1406–07 (8th Cir.1997) ("The jury is ... free to draw reasonable inferences from the evidence presented about what the defendant's state of mind was when he did or said the things presented in the evidence.").

**2. What the Contract Implied**.

> *Comer opines that because the project proposal document stated that TDWP is a manufacturer authorized contractor, "I believe reasonably implies TDWP is pre-qualified and authorized to perform and ensure their own quality assurance for the product being installed." Because TDWP was chosen as the contractor, "[t]his, I believe, reasonably confirms that TDWP recognizes that ICC specifically chose, selected, warranted, guaranteed, approved and authorized TDWP to perform the work, a 'Proposal-Contract entered into and agreed to under and pursuant to the laws of the State of Kansas."*

Defendants state that Comer is attempting to offer legal opinions and factual inferences from the language of the contract which is improper expert testimony and is for the jury to determine. Plaintiff argues that Comer's statements are based on his experience as an engineer who has examined, reviewed and consulted on many construction projects. Plaintiff argues that Comer's opinion will assist the trier of fact in determining the duties of the parties and that defendant's arguments go to the weight of his testimony, not its admissibility. Defendants state that what Comer infers from the contract is irrelevant as inferences from a contract are determinations for the jury and do not require engineering expertise. A professional engineer does not have any expertise that would assist in determining the legal meaning of a contract. The Court agrees and finds that Comer is attempting to infer what the language of the contract meant. "Testimony regarding the weight and credibility of evidence as well as issues of contract interpretation are left to the jury." Lipp, 2017 WL 277613 at *4.

**3. The warranties, whether the product should have been applied and industry standards.**

> *"The parties to the installation of the product (ASTEC WMS) specifically and repeatedly in writing . . .warranted and guaranteed that the product would, once applied, function to resolve all leak related problems, among other guarantees. Because of these facts, among other related findings and revelations presented herein, the installation of the product should not*

*have been performed by an authorized contractor representing ICC in my opinion. In my opinion it is shown herein to a reasonable degree of engineering certainty, that workmanship relative to installation of the ASTEC WMS on the referenced roof system does not meet the roofing or painting and coatings industry standards of practice or standards of care."*

Defendants state that Comer is making legal conclusions and factual inferences that he is not qualified to make and which are the province of the Court and the jury to decide. Additionally, defendants state that Comer does not cite a single industry standard that defendants' application of the product violated. Plaintiff states that Comer is relying on correspondence between the parties, pictures of the roof and ICC's specifications and guaranty to determine whether the installation of the roof coating could provide a leak proof barrier and whether it met the industry standard of care.

In <u>Lipp</u>, the Court noted, [a]llowing testimony as to the requirements for a joint venture-a matter that can be illustrated succinctly in jury instructions-would be improper because it is unnecessary, not helpful to the jury and, cloaked as expert testimony, would be unduly prejudicial." <u>Id</u>. 2017 WL 277613, *3. In the instant case, allowing Comer to testify that the parties "warranted and guaranteed" that the ASTEC-WMS would resolve all leak related problems is unnecessary, unhelpful and could be unduly prejudicial. The opinion should also be excluded because it fails to explain what standards of practice or care were violated or how the installation of the ASTEC WMS violated these standards. Accordingly, Comer will not be allowed to testify regarding the issue of warranties or whether the installation of the product met industry standards of practice or care.

4. **Photos taken on May 5 and 12, 2018.**

> *Photos taken on May 5 and 12, 2018 "revealed the metal decking was severely deteriorated at the time, revealing the metal decking was not structurally sound enough to support application of the ASTEC WMS . . . ."*

Comer opines that photos taken on May 5 and 12, 2018 showed the metal decking was severely deteriorated and not structurally sound enough to support application of the roof coating. Defendants argue that this opinion fails to show the condition of the roof in 2012, six years earlier when the coating was applied. Plaintiff argues that the photos support information provided to Comer, such as correspondence from a third-party roofing company in 2015 stating that the roof required a full tear off and replacement of some of the roof deck. The roofing material was installed between June 25 and July 2, 2012. Comer did not personally examine the roof in 2012 and the entire roof was replaced prior to his site examination on May 30, 2018. Defendants argue that Comer is attempting to rely on photographs that he did not take and that he was unable to compare the actual condition of the roof when ICC's product was installed. Defendants state that photos taken almost six years after the roofing system was installed reveal nothing of the condition of the roof when the material was installed in 2012. Defendants also argue that Comer is not a metallurgist, he took no measurements or coring samples of the roof and did not conduct any tests of the metal in the roof.

The Court agrees that this opinion should be excluded. The photos were taken several years after the ASTEC Coating was applied in 2012. Comer's testimony about what the 2018 photos indicate about the condition of the roof would not be of assistance to the jury and could potentially cause confusion. Accordingly, this opinion will be

excluded.

## 5. Plaintiff's Concerns re: roof

*Plaintiff was concerned about ponding and water saturation of the roof.*

Comer states that his review of documents showed the defendants knew plaintiff was concerned about ponding and water saturation. Defendants argue that this is a factual inference that is for the jury to decide and Comer's opinion is not necessary. Plaintiff argues that his concern regarding the ponding and ICC's email that it was installing five vents shows that ponding occurred on the roof prior to and at the time the product was applied. Defendants argue that Comer's testimony is unnecessary and plaintiff can testify regarding what his concerns were. Defendants also argue that Comer has no evidence that the roofing material was applied when there was ponding on the roof. As noted above, "[i]t is well settled that expert witnesses cannot draw legal conclusions or opine on the Parties' state of mind." Lipp, 2017 WL 277613 at *4. Plaintiff can easily testify himself as to what issues he was concerned about regarding the roof. Accordingly, Comer will not be permitted to testify as to this issue.

## 6. Installation of One-Way Vents.

> *"It is later confirmed by another ICC qualified or approved installation contractor that the one-way vents, among other items, were installed incorrectly in some locations, an error which resulted in causing more water saturation of the existing roof covering which still existed at the time (May 2018 – six years after the ASTEC WMS was installed/applied) beneath the ASTEC WMS."*

Plaintiff argues that Comer is not opining on whether the vents were incorrectly installed, rather he is relying on information provided to him to support his opinion that defendants did not address the issue of vents. Defendants state that Wilson did not recommend installation of vents and the contract did not specify installation of vents.

Defendants argue that Comer is adopting someone else's opinion as his own and there is no foundation for this opinion. Plaintiff states that pursuant to Fed.R.Evid. 703, an expert can rely on information that is provided to him and that attacks on the foundation of an expert's opinion go to the weight of the opinion, rather than its admissibility. If Comer is not providing an opinion regarding installation of the one-way vents, then the Court agrees that this opinion should be stricken. An expert can rely on information provided to him, but in this case, Comer is attempting to adopt another's opinion as his own. The Court finds that this opinion would not be of assistance to the jury and could potentially cause confusion. Accordingly, Comer will not be allowed to testify regarding this issue.

### 7. Comer's Personal Knowledge of ASTEC

> *"My personal knowledge of this material (ASTEC WMS) is that it must be applied to a moisture free and deterioration free base, having a substrate that is clean and structurally sound."*

Defendants state that Comer's CV does not mention any personal experience with ASTEC. Plaintiff states that Comer reviewed ASTEC specification documents and that his experience and expertise allow him to interpret and understand the ASTEC specification documents and the product itself, better than a lay person. Defendants state that there is no indication that Comer ever personally used, examined or had any experience with the ASTEC product. The Court agrees and finds that Comer will not be allowed to offer an opinion based on his personal knowledge of the ASTEC WMS because he has never used, examined or tested the product. The jury is capable of reading and interpreting the ASTEC specifications just as Comer is. Thus, because this testimony would not be assistance to the jury, it will be excluded.

## 8. Industry Standard

> *"It is industry standard that ponding conditions must always be rectified prior to installation of a roof covering or coating system installation."*

Defendants argue that Comer does not indicate what standard he is referring to. Plaintiff states that Comer relies on the International Building Code for this statement as well as his own experience and expertise. Defendants argue that Comer does not recite what portions of the IBC or which standard was relied upon. In the Advisory Committee Notes to Fed.R.Evid. 702, the Committee noted:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." See Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1319 (9th Cir. 1995).

The Court does not find that Comer's opinion on this issue would be of assistance to the jury because he has not explained what provision of the International Building Code he is relying on, what the specific code provision states regarding this issue or how his own experience leads him to the conclusion that ponding conditions must be rectified prior to installation. Additionally, Comer has not even demonstrated that ponding existed on the roof at the time that the ASTEC product was installed. Thus, the Court finds that this opinion should be excluded because of a lack of reliability and foundation.

## 9. Opinion re: Rust-Through

> *"Rust-through constitutes a complete loss of structural support in the material"* and *"this confirms that roof decking was not structurally sound at [the] time of application of the ASTEC WMS."*

Defendants state that other than examination of photos and a representation by

the owner that rusted portions had been replaced, Comer has no knowledge of what roof decking sections were replaced or where the sections were in relation to the roof leaks. Plaintiff argues that Comer is an engineer and is qualified to testify regarding the effects of rust and how it affects the structural integrity of the roof. Plaintiff states that the rusted decking can only mean either the decking was rusted in 2012 when the product was applied or the product failed and water rusted the decking after the product was applied. Plaintiff argues that Comer's testimony is relevant to these issues.

Defendants state that Comer did not perform a site visit until six years after the product was applied to the roof, he was not present when the roof was replaced, he did not perform any testing on the roof decking and provides no data to support his conclusions. The Court agrees that this opinion should be excluded. The effect of rust on the structural integrity of a roof is a concept that the jury can understand without the need for an expert opinion. The Court will not allow Comer to offer an opinion on the structural soundness of the roof decking, because Comer was not present when the ASTEC product was applied in 2012 or when the roof was torn off and replaced in 2018. Comer took no photographs, no measurements and conducted no tests on any samples of the roof or the roof decking. Thus, the Court finds that Comer's opinion as to the structural integrity of the roof decking is without foundation and is unreliable.

**10. Comer's Testimony Which Is Not Based on Tests or Inspections.**

> *"Since I cannot test the material that is now removed and taken away, I have no test results to offer in this case other than to provide the observation and opinion based on same that, where the metal decking is rusted through it is providing the roofing material no support."*

Defendants argue that Comer did not examine the roof until the deck had been replaced and the tear off and re-roofing was completed. Plaintiff argues that Comer has

knowledge through his education, training and experience to understand the photos of the roof damage and interpret them for the jury. Defendants state that Comer's conclusions are not reliable because he is simply looking at photos and drawing conclusions. He did not personally take any photographs, conduct any tests, measure any affected areas or determine if the conditions affected the entire roof or only certain portions.

Comer states in his report: "I was not on site during removal and replacement I cannot confirm the moisture content of the substrate materials at the time the roof was replaced this year, I cannot confirm the moisture content in 2012, and my evaluation of the roof decking is based primarily on photos and statements made by the owner and the repair contractor." (Comer Supplemental Report, p. 7). For the same reasons as stated above in ¶9, the Court finds that Comer's testimony would be unreliable and is therefore excluded.

**11. Opinion re: Covering a Structurally Unsound Roof Might Make the Membrane More Susceptible to Damage.**

> *"[B]ased on the information presented to me, it is known that the substrate (the structural metal decking) is required to be structurally sound (completely connected to the structural joists and of adequate integrity such that it does not have rust through holes that otherwise compromise it's integrity) prior to any reroof or recovering system installation.*

Comer states that covering a structurally unsound roof might make the membrane more susceptible to damage. Defendants argue that Comer does not tie this hypothesis to a specific area of damage to the membrane or to any leaks in the roof surface. Plaintiff argues that Comer need not show that a specific weakness caused a specific leak. Comer's opines on how the "rust-through" areas of the roof can cause the membrane to fail. Plaintiff states that this cause and effect relationship is relevant to

plaintiff's claims. Defendants state that Comer's opinion is based on the unfounded assumption that the roof decking is and was unsound when the roofing system was installed. Additionally, defendants state that Comer has not tested the hypothesis that covering an unsound roof with ASTEC would make it more susceptible to damage. The Court agrees that Comer will not be permitted to testify regarding his opinion that covering an unsound roof with the ASTEC membrane might make the membrane more susceptible to damage. There is no foundation for Comer's opinion that the roof was structurally unsound when the ASTEC product was installed. Additionally, Comer has not tested his hypothesis making it unreliable.

## 12. Cracking of the Membrane

> "[T]hough I examined the building after the ASTEC WMS roof coating had been replaced, it is reasonable to conclude the rusted metal decking which was not a structurally sound material caused excessive deflection in the existing roof covering beneath the ASTEC WMS coating, which in turn resulted in a significant weakening of the support for the roof covering and coating, which also resulted in enough flex, expansion and/or contraction of the combination of materials to cause the coating to crack, separate and allow moisture into the subsurface during and after rainfall events (after because of the ponding of water that is normal to flat roofs)".

Comer hypothesizes that it was reasonable to conclude that a variety of factors led to cracking of the membrane surface and subsequent leaks. Defendants argue that Comer did not inspect the roof prior to replacement, conducted no tests to show that the ASTEC membrane cracked or was capable of cracking. Plaintiff argues that testing of the membrane was not necessary to determine that the product failed. Defendants guaranteed a leak free roof, but that is not what was delivered. Plaintiff states that defendants can cross-examine Comer as to why the membrane failed or they can present evidence of a contrary reason as to failure, but Comer should be allowed to

present his opinion. Comer will not be allowed to testify that the membrane cracked due

to the expansion and or contraction of materials because he did not examine the roof at

the time the membrane was applied in 2012 or before it was removed in 2018.

Additionally, Comer conducted no tests of the membrane material after it had been

removed. Comer also did not conduct any tests which would verify his hypothesis

regarding the expansion and or contraction of the materials. Thus, because there is no

foundation for Comer's opinion that rusted metal decking caused excessive deflection in

the roof which lead to cracking of the membrane, it will be excluded as unreliable.

**13. Defendants Should Have Known Not to Install the ASTEC Coating on a Saturated Roof in 2012**.

> *"[I]t is reasonable to conclude that both parties (ICC and TDWC) knew or should have known not to install the ASTEC WMS on the existing roof system in the condition it was in at the time in 2012."*

Defendants state that Comer in his report does not point to any facts showing

that water was on or inside the roof at the time the ASTEC coating was applied. Plaintiff

states that Comer's opinion is that the membrane failed due to a combination of factors

including water saturation, improper drainage, rusted roof supports and external factors

such as hail and air pressure. Defendants argue that Comer's opinions are founded on

the assumption about what condition the roof was in during 2012.  However, he does

not and cannot know this information based only on his review of documents.

Defendants state that Comer's report provides no analysis of how any of the factors –

water saturation, improper drainage, rusted roof supports or external factors could or did

cause the leaks. Defendants argue that Comer's hypotheses are unsupported, untested

and unresearched and because of that he should not be allowed to testify as an expert

witness. As the Court noted above, "an expert 'is not competent to testify as to the state

of mind of others.'" <u>Jacobsen</u>, 2019 WL 3779524, *2. Comer is again attempting to testify as to defendants' states of mind and what they knew or should have known about installing the ASTEC WMS on the roof in 2012. Accordingly, Comer will not be allowed to present his opinion on this issue.

## IV. <u>CONCLUSION</u>

Accordingly, for the reasons stated above, defendants' Joint Motion to Exclude the Testimony of plaintiff's expert witness Frank Comer (Doc. # 46) is hereby **GRANTED**.

Date: <u>September 18, 2019</u>                            **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                                Fernando J. Gaitan, Jr.
                                                                      United States District Judge